IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAZEL BROWN BARTHOLOMA and JOEY MENDONCA, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>MARRIOTT BUSINESS SERVICES, ET AL.,<br><br>        Defendants. | Civ. No. 18-00044 JMS-RLP<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATION, AND REMANDING ACTION TO THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAII |

**ORDER ADOPTING FINDINGS AND RECOMMENDATION, AND REMANDING ACTION TO THE CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAII**

**I. INTRODUCTION**

Defendants Marriott Business Services, Marriott International, Inc., and Essex House Condominium Corporation (collectively, "Defendants") object under 28 U.S.C. § 636(b)(1) and Local Rule 72.4 to an April 18, 2018 Findings and Recommendation of Magistrate Judge Richard L. Puglisi to Grant Plaintiffs' Motion to Remand (the "April 18 F&R"). ECF No. 17. The April 18 F&R recommended that the court remand this action to the Circuit Court of the First

Circuit, State of Hawaii ("State Court") because Defendants' removal of this action was untimely. Specifically, it determined that Plaintiffs' Third Motion for Class Certification, filed November 6, 2017, triggered 28 U.S.C. § 1446(b)(3), which required Defendants to remove the action "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." And, because Defendants removed on February 1, 2018, well past this thirty-day window, the April 18 F&R concluded that the removal was untimely and thus recommended that this case be remanded to State Court.

Upon de novo review, the court agrees that the filing of the Third Motion for Class Certification was a motion from which Defendant could first ascertain that Plaintiffs were alleging, among other requirements, an amount in controversy in excess of $5 million such that the case was then subject to removal under the Class Action Fairness Act ("CAFA"). Accordingly, the court OVERRULES the objections, ADOPTS the April 18 F&R, and REMANDS the action to State Court.

## II. BACKGROUND

### A. State Court Proceedings

Plaintiffs filed a First Amended Complaint ("FAC") in State Court on March 8, 2016. ECF No. 5-4. It alleges that Plaintiffs were employed by Defendants at the Marriott's Kauai Beach Club to work on banquets and other food and beverage service events. *Id*. ¶¶ 5, 14. It further claims that Defendants wrongfully withheld from Plaintiffs a service fee paid by the hotel's customers to Defendants. *Id*. ¶ 14. This conduct, according to the FAC, was in violation of Hawaii Revised Statutes ("HRS") §§ 481B-14, 480-2, and 388-6, and "Plaintiffs and other members of the proposed class are entitled to treble damages in accordance with HRS Section 480-13(a)." *Id*. ¶¶ 15, 19. Plaintiffs filed their Third Motion for Class Certification on November 6, 2017. ECF No. 6-3.

### B. Federal Court Proceedings

On February 1, 2018, Defendants removed the case to this court, asserting CAFA jurisdiction. ECF No. 1. Plaintiffs filed a Motion to Remand on March 2, 2018, Defendants filed an Opposition on March 15, 2018, and Plaintiffs filed a Reply on March 29, 2018. ECF Nos. 10, 13, and 15.

After the April 18 F&R granted Plaintiffs' Motion to Remand, ECF No. 16, Defendants filed Objections on May 2, 2018, and Plaintiffs filed a

Response to the Objections on May 16, 2018. ECF Nos. 17 & 19. The court determines this matter without a hearing pursuant to Local Rule 7.2(d).

## III. **STANDARD OF REVIEW**

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## IV. **DISCUSSION**

The sole issue before the court is whether Plaintiffs' Third Motion for Class Certification triggered § 1446(b)(3)'s thirty-day removal clock.[1] Plaintiffs argue that the February 1, 2018 removal to this court was untimely because Defendants were placed on notice sufficient to trigger removal based on their Third Motion for Class Certification, filed on November 6, 2017. Defendants, in turn, claim that the Third Motion for Class Certification did not provide them sufficient notice that the aggregate amount in controversy equals or exceeds $5 million. The court first sets forth the legal principles that apply to CAFA removal, and then addresses the timeliness of Defendants' removal to federal court.

### A. **Removal Under CAFA**

CAFA permits defendants to remove class actions to federal court when three requirements are met: 1) a minimal diversity of citizenship between the parties; 2) the proposed class must have at least 100 members; and 3) the aggregated amount in controversy must equal or exceed the sum or value of $5

---

[1] Plaintiffs also claimed below that discovery from April and October, 2017 placed Defendants on sufficient notice to trigger § 1446(b)(3)'s thirty-day removal period. Magistrate Judge Puglisi found that these disclosures did not trigger an obligation to remove, and that ruling has not been challenged. The court thus focuses solely on whether the November 6, 2017 Third Motion for Class Certification triggered the thirty-day window to remove.

5

million.[2]  28 U.S.C. § 1332(d); *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1182 (9th Cir. 2015).  Unlike other removal statutes, the court applies no presumption against removal in CAFA cases.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

The removal statute, 28 U.S.C. § 1446, provides two thirty-day windows during which a case may be removed.  First, a CAFA defendant must remove a case within thirty days of the service of the complaint that is removable on its face.  28 U.S.C. § 1446; *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013).   But if the initial pleading does not trigger removal, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).[3]  This second thirty-day window under § 1446(b)(3) "requires a paper that shows a ground for removal that was previously unknowable or unavailable."  *Chan Healthcare Grp., PS v. Liberty Mut.*

---

[2] Defendants do not dispute that they were on sufficient notice that Plaintiffs alleged minimal diversity of citizenship and a proposed class of at least 100 members.

[3] These two time periods are not exclusive.  Thus, "as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014).

6

*Fire Ins. Co*., 844 F.3d 1133, 1142 (9th Cir. 2017). And if removal becomes ascertainable by the filing of an amended pleading, motion, order, or other paper, it "will trigger the thirty-day removal period, during which defendant must either file a notice of removal or lose the right to remove." *Roth v. CHA Hollywood Med. Ctr., L.P*., 720 F.3d 1121, 1126 (9th Cir. 2013).

"[D]efendants need not make extrapolations or engage in guesswork" to determine if a case is removable. *Kuxhausen,* 707 F.3d at 1140. No independent investigation is required. Instead, the statute only "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 206 (2d Cir. 2001)). Thus, courts will not "charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove." *Id.* at 1141 (quoting *Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1251 (9th Cir. 2006)).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010) (citing *McPhail v. Deere & Co*., 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that

will be put at issue in the course of the litigation.")); *see also Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).

**B.    Defendants' Removal Was Untimely**

To understand Plaintiffs' allegations and the request sought by the Third Motion for Class Certification, the court first sets forth some background regarding HRS § 481B-14, the statute at the center of this case.  The court then addresses the allegations in the FAC and Third Motion for Class Certification, and whether those allegations, understood in relation to § 481B-14, triggered the 30-day period to remove under § 1446(b)(3).[4]

*1.  HRS § 481B-14*

HRS § 481B-14 requires that any hotel or restaurant that applies a "service charge" for the sale of food or beverage "shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."

---

[4] Defendants claim that "removability must be contained within the four corners of the document that plaintiff claims establishes removability" and thus the court cannot look beyond the Third Motion for Class Certification.  Objs. at 13.  The court rejects this argument, and considers in this order both the FAC and the Third Motion for Class Certification to determine if the filing of the Third Motion for Class Certification triggered the second thirty-day period.  *See Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 696 (9th Cir. 2005) (finding removal timely under the second thirty-day time period by considering the allegations of diversity in the original complaint in conjunction with a letter written by counsel approximately ten months later).

In *Kawakami v. Kahala Hotel Investors, LLC*, 134 Haw. 351, 341 P.3d 558 (2014), the Hawaii Supreme Court determined that "for the purposes of enforcement under Hawaii's UDAP and UMOC provisions . . . the phrase 'wages and tips [of employees] . . . mean[s] 'tip income,' rather than 'wages.'" *Id*. at 358, 341 P.2d at 564.[5] And it held that "a hotel or restaurant that applies a service charge for food or beverage services must either distribute the service charge directly as tip income to the non-management employees who provided the food or beverage services, or disclose to its customers that the service charges are not being distributed as tip income." *Id*. at 354, 341 P.3d at 560; *see also Kawakami v. Kahala Hotel Investors LLC*, No. SCWC-11-0000594, 2018 WL 3197543, at *13 (June 29, 2018).

The court based its holding on its previous decision that § 481B-14 is "primarily focused on the problem of the 'uninformed consumer, who may not leave additional tips for the service employees, mistakenly thinking that the service charge . . . paid [constituted] tips." *Kawakami*, 134 Haw. at 360, 341 P.2d at 566 (quoting *Gurrobat v. HTH Corp*., 133 Haw. 1, 17, 323 P.3d 792, 808 (2014)). And it distinguished its holding in *Villon v. Marriott Hotel Services, Inc*., 130 Haw.

---

[5] Under HRS § 480-2, "UDAP" refers to an unfair or deceptive act or practice in the conduct of trade or commerce, while "UMOC" refers to an unfair method of competition. Plaintiffs' FAC makes a claim under § 480-2, and seeks treble damages under § 480-13(a) based on a violation of § 480-2.

9

130, 306 P.3d 175 (2013), which it said was "expressly limited to the meaning of 'compensation earned' under HRS § 388-6." *Id.* at 359, 341 P.3d at 565. Finally, it described the harm to employees as the "depriv[ation] of the extra income they would have earned had the hotel distributed the entirety of the service charge as 'tip income.'" *Id.* at 360, 341 P.3d at 566.

### 2. *Analysis*

The court first addresses Defendants' objection "to the conclusion rejecting Defendants' argument that they did not know that the $2.2 million in service charge paid to the class employees as wages discussed in Plaintiffs' Third Motion to Class Certification would form the basis of plaintiffs' claims for damages." Objs. at 8. In ruling on this objection, the court considers the allegations in the FAC and the Third Motion for Class Certification.

The FAC sets forth the basic theory of Plaintiffs' claim for damages under § 480B-14 — that Defendants: 1) charged customers a service fee; 2) failed to clearly disclose to these customers that a portion of the service charge was not distributed to the employees but instead was retained by Defendants; and 3) no portion of the service fee was paid to the employees as tip income. FAC ¶¶ 14-15. The FAC then alleges that "[i]n the absence of the required disclosures to customers, **all** such service charges were payable **in full** to the employees who

rendered the services[,]" that Defendants "failed to pay the **entire** service charge to said employees," and that the "wrongfully withheld service charges" are subject to treble damages under HRS § 480-13. *Id*. ¶¶ 18-19 (emphases added). Thus, the FAC sets forth in plain language the basis for an award of damages — because Defendants failed to comply with HRS § 480-14, "all" or "the entire" service charges are "payable in full" to the employees as tip income.

The Third Motion for Class Certification then set forth the following in support of its request for class certification[6]:

> ● HRS § 481B-14 provides hotels with a binary choice. Either pay all the service charge monies to workers as tip income or clearly disclose that it is being used for something else. Here, Defendants did neither. Defendants verified that the bulk of its "disclosures", when used, included the following language "A minimum of 17% [varied up to 22% during class period] is allocated to wages and tips for our employees." Despite this, Defendants' verified answers to interrogatories and HRCP Rule 30(b)(6) sworn deponents have all testified that none of the "minimum" service

---

[6] Plaintiffs sought certification of the following class:

> All past and present non-management employees of the Hotel who, on or after January 21, 2010, provided services in connection with the sale of food and/or beverages at the Hotel for which a service charge or gratuity charge was (a) imposed by the Hotel without a clear disclosure to customers that (b) less than 100% of the service charge or gratuity charge would be distributed to said nonmanagement employees.

ECF No. 6-3 at PageID # 900.

11

charges are paid to its employees as tips. Contrary to its "disclosure", **Defendants allocated <u>all</u> service charges to employee wages.** Defendants' undisclosed use of service charges to pay employee wages is an express violation of HRS § 481B-14.

- Interestingly enough, during this time period, a total of $2.2M service charge payments were allocated to employee wages under the guise of "tips" to these 122 banquet and room service employees when in fact they were instead allocated to offset wages.

- It is undisputed Defendants failed to provide the entirety of the service charges they imposed and collected to the food and beverage service employees. Defendants testified that they failed to distribute *any* tip income to its service employees throughout the class period and instead used the service charge monies to pay employee wages without disclosure and in violation of HRS § 481B-14. This resounding violation of law is common to the entire class. Similarly, the question of damages is common to the entire class and simply apportioned according to law and the Defendants' payroll records of the 122 service employees which they concede that they "allocated" $2.2M in service charge wages disguised as "tips" clearly establishes predominance.

ECF No. 6-3 at PageID # 901, 902, 903, 907.[7]

The Third Motion for Class Certification thus clarifies Plaintiff's theory that § 481B-14 offers a "binary choice" — to either pay **all** the service

---

[7] Of course, because Plaintiffs made clear in their FAC that they sought treble damages under HRS § 480-13, the $2.2 million would be multiplied by three (for a total of $6.6 million in controversy).

12

charge collected as tips or follow the statute's required disclosure, but "Defendants did neither." *Id.* at PageID # 902. That is, the Third Motion for Class Certification states, without qualification, that Defendants paid no tip income to the employees, and lied in their disclosure to their customers that the service charge was paid to employees as tips and wages, when in fact all service charges were used to offset wages. The disclosure was thus ineffective under § 481B-14, and the entire $2.2 million was required to be paid as tip income to the employees. According to this theory of damages, as a result of the failure to "clearly disclose," under § 481B-14, the entire $2.2 million should have been paid as tip income.

Plaintiff's theory does not require guesswork, conjecture, or investigation by Defendants. Instead, after a reading of the FAC and Third Motion for Class Certification, Defendants didn't even need pen and paper to determine the amount in controversy — instead, they simply had to multiply $2.2 million by three (treble damages) to determine that the amount in controversy was $6.6 million.

Defendants also object to the April 18 F&R's conclusion that "Hawaii law is clear that employees must distribute 100% of the service charge to their employees as tip income." April 18 F&R at 8. But the law is clear — "clearly disclose" that the service charge is used for something other than tips, or pay 100%

of the service charge as tip income. *Gurrobat*, 133 Haw. at 18, 323 P.3d at 809 ("the plain language of HRS § 481B-14 required Defendants to either distribute one-hundred percent of the service charge to employees as 'tip income' or disclose their retention of a portion of the service charge to customers"). Again, Plaintiffs' theory for recovery is that 100% of the tip income (meaning 100% of the $2.2 million) had to be paid to the employees because Defendants provided a false disclosure. And the FAC makes equally clear that the measure of damages is "the wrongfully withheld service charges," including "treble damages" under HRS § 480-13. FAC at ¶ 19.

Defendants' remaining arguments confuse their defense to the damages sought by Plaintiff with the removal standard applied by the court. For instance, Defendants claim that damages should be limited to the portion of service charge retained by the Defendants without a disclosure. Objs. at 19. Maybe so. But to determine the amount in controversy, the court doesn't make a "prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400. Likewise, Defendants' potential defense that federal law requires them to treat the service charge as wages for FICA purposes is not relevant to the amount in controversy.

The court thus concludes that the filing of the November 6, 2017 Third Motion for Class Certification triggered section 1446(b)(3)'s thirty-day

clock. Defendants' February 1, 2018 removal is thus untimely.

## V. <u>CONCLUSION</u>

Based on the foregoing, the court ADOPTS the April 18, 2018 F&R. The objections are OVERRULED. The action is REMANDED to the State Court, and any pending deadlines in federal court are vacated.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 10, 2018.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Bartholoma, et al. v. Marriott Bus. Servs.*, Civ. No. 18-00044 JMS-RLP, Order Adopting Findings and Recommendation, and Remanding Action to the Circuit Court of the First Circuit, State of Hawaii